# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL CHMIEL, <br><br>          Plaintiff, <br><br>     v. <br><br> SEDO.COM, LLC, and, <br> Sedo.com, LLC <br> 161 First Street, Fourth Floor <br> Cambridge, MA 02142 <br> USA <br><br> mTLD, LTD. <br> 11 Exchange Place <br> IFSC <br> Dublin, Ireland <br><br> JEAN ROMAIN COLUMBANI <br> 39 Rue de Celony, 13100 Aix-en-Provence, France <br><br>       Defendants. | Civil Action No._____ |

## NOTICE OF REMOVAL OF ACTION FROM THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Pursuant to 28 U.S.C. § 1441 *et seq.* Defendants Sedo.com, LLC ("Sedo") and mTLD, LTD ("mTLD") (jointly, the "Defendants") respectfully notify this Court of the removal of this action brought by Plaintiff Paul Chmiel ("Plaintiff"), currently pending before the Superior Court of the District of Columbia (the "Superior Court"), Washington, D.C., to the United States

District Court of the District of Columbia. This notice is based on the grounds for removal set forth below.

## I.    INTRODUCTION

1.      On or about January 18, 2007, Plaintiffs Costantine Roussos, Paul Chmiel, Chris Aston James, and Erwin Mahroug filed a Complaint with Superior Court, naming Sedo and mTLD as defendants. The case is styled as *Costantine G. Roussos v. Sedo.com et al.*, Case No. 000428 B (the "Superior Court Action").

2.      The Superior Court issued an Initial Order and Addendum regarding the Complaint on January 18, 2008. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint and this order are attached hereto as Exhibit A.

3.      On or around February 10, 2008, Plaintiff James reached a settlement with the Defendants. Plaintiff Mahroug also agreed to settle his dispute with the Defendants on or around February 15, 2008, and Plaintiff Costantine Roussos and the Defendants reached a settlement on or around February 25, 2008.

4.      As a result of the settlements with original Plaintiffs James, Mahroug, and Roussos, on February 27, 2008, the Plaintiffs filed a Notice of Settlement and Release of Claims by Plaintiffs Roussos, Mahroug, and James with the Superior Court. Thus Plaintiff Paul Chmiel is the only remaining Plaintiff in the Superior Court Action.

5.      On February 27, 2008, the Plaintiffs filed an Amended Complaint, including an additional Defendant, Jean Romain Colombani, and omitting the settling Plaintiffs Roussos, Mahroug, and James. A true and correct copy of the First Amended Complaint is attached hereto as Exhibit B.

2

6.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332. The Superior Court Action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) because it is the District Court of the United States embracing the place where this action is currently pending, the Superior Court of the District of Columbia. As set forth in further detail below, removal is based on diversity jurisdiction and the matter in controversy exceeds $75,000.

7.     Defendants Sedo and mTLD both expressly consent to removal by the filing of this Notice. Defendant Jean Romain Colombani has not consented to removal, however, he has not yet been served with a copy of the Complaint.

8.     No admission of law, fact, or liability is intended by this Notice of Removal, Defendants expressly reserve all defenses to the Complaint. The Defendants also reserve the right to amend or supplement this Notice of Removal.

9.     Pursuant to 28 U.S.C. § 1446(d), true and correct copies of this Notice of Removal, along with its accompanying exhibits, are being served upon Plaintiff's counsel and filed with the Superior Court.

## II.    NOTICE OF REMOVAL IS TIMELY

10.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b). On February 15, 2008, Plaintiffs and the Defendants agreed that the Defendants would be deemed to have accepted service of the Complaint, Initial Order, and Addendum effective February 8, 2008.

11.     As explained above, on or around February 10, 2008, the Defendants settled their dispute with Plaintiff James. On or around February 15 and 25, 2008 the Defendants reached a settlement with Plaintiffs Mahroug and Rousso respectively.

3

12.    After executing a settlement agreement with Plaintiff Mahroug on February 15,

2008, the Defendants ascertained that the Superior Court Action had become removable because

the settlement with Erwin Mahroug removed the last remaining foreign Plaintiff from the action,

thereby creating complete diversity between the Defendants and the remaining Plaintiff, Paul

Chmiel.  *See* 28 U.S.C. § 1332(a); *see also Eze v. Yellow Cab Co. of Alexandria, VA., INC.,* 782

F.2d 1064, 1065 (D.C. Cir 1986); *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425,

427 (7th Cir. 1993).  This settlement agreement was the first paper from which the Defendants

could make this determination.

13.    Thus, this Notice is timely filed under 28 U.S.C. § 1446(a) because it is filed

within 30 days of when Defendants are deemed to have accepted service (February 8) and

alternatively under 28 U.S.C. § 1446(b), because it is filed within 30 days from the date

(February 15) that the action became removable.

## III.    DIVERSITY JURISDICTION EXISTS

14.    This is a civil action for which there is complete diversity of citizenship pursuant

to 28 U.S.C. § 1332.

a.    Sedo.com, LLC is a Massachusetts limited liability company, with its

principal place of business located in Cambridge, Massachusetts.  Sedo.com LLC is a

wholly owned subsidiary of Sedo GmbH whose principal place of business is in Cologne,

Germany.

b.    mTLD, LTD is an Irish company limited by shares with its principal place

of business in Dublin, Ireland, and incorporated under the laws of Ireland.  mTLD is a

citizen of Ireland because it "is equivalent in all legally material respects to a corporation

4

under state law." *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *see also Universal Reinsurance Co., LTD v. St. Paul Fire and Marine Ins. Co.*, 224 F.3d 139 (2d Cir. 2000).

   c.  Upon information and belief, Defendant Jean Romain Colombani is domiciled in, and a citizen of, France.  Colombani's address listed on the First Amended Complaint is 39 Rue de Celony, 13100 Aix-en-Provence, France.  Defendant Colombani has not yet been served with a copy of the Complaint, and his consent to this Notice of Removal is therefore not required.  *See Kopff v. World Research Group*, LLC, 298 F. Supp. 2d 50, 55-57 (2003); *see also Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-49 (1999).

   d.  Upon information and belief, Plaintiff Chmiel is domiciled in, and thus a citizen of, the state of Texas.  The address listed for Plaintiff is 12607 Ashclift Drive, Houston, Texas 77082.

## IV. AMOUNT IN CONTROVERSY

15. The amount in controversy requirement under 28 U.S.C. § 1332 is also met.

   a.  In his Complaint, Plaintiff seeks specific performance for the delivery to him of the domain names sports.mobi, video.mobi, videos.mobi, photo.mobi, and photos.mobi. (Comp. Pr. Rlf. ¶ 7).  "It is the value of the property rather than the claim of the contending parties which fixes the amount in controversy for purposes of jurisdiction." *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1048 (11th Cir. 1993) (quoting *Peterson v. Sucro*, 93 F.2d 878, 882 (4th Cir. 1938)).  These domain names,

sports.mobi, video.mobi, videos.mobi, photo.mobi, and photos.mobi, have a value of over

$75,000.  *See* Declaration of Caroline Greer, attached hereto as Exhibit C.

      b.      In addition, Plaintiff Chmiel requests compensatory damages of at least

$5,000, as well as punitive damages and treble damages in connection with his District of

Columbia Consumer Protection Procedures Act ("DCCPPA") claim.  Comp. ¶¶ 79-81,

Pr. Rlf. ¶¶ 5-6; D.C. Code § 28-3904.  "Punitive damages are properly considered as part

of the amount in controversy" because the DCCPA permits recovery of such damages in

certain circumstances.  *See Naegele v. Albers*, 355 F. Supp. 2d 129, 134 (D.D.C. 2005);

D.C. Code § 28-3905(k)(1)(C).

      c.      In sum, Plaintiff Chmiel seeks relief in the form of specific performance,

compensatory damages, punitive damages, and treble damages that exceeds the amount

in controversy requirement of $75,000 under 28 U.S.C. § 1332.

WHEREFORE, through this Notice of Removal, the Defendants remove the state court

action styled as *Constantine G. Roussos v. Sedo.com et al.*, Case No. 000428 B, pending in the

Superior Court of the District of Columbia, Civil Division, to this Court for all further

proceedings.  The Defendants respectfully request that this Court make and enter such further

orders as may be necessary and proper.

Dated: February 29, 2008

Respectfully submitted,

Samir Jain (D.C. Bar No. 456090)
WILMER CUTLER PICKERING HALE &
   DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
202-663-6000 (telephone)
202-663-6363 (facsimile)
Samir.Jain@wilmerhale.com

*Counsel for Defendant mTLD, LTD*

Dennis M. Hart (D.C. Bar No. 935643)
BUTERA & ANDREWS
1301 Pennsylvania Avenue NW, Suite 500
Washington, D.C. 20004
202-347-6875 (telephone)
202-347-6876 (facsimile)
dhart@butera-andrews.com

*Counsel for Defendant Sedo.com, LLC*

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 29th day of February, 2008, two copies of the foregoing

Notice of Removal were filed with the Clerk of the Court via courier to:

> Nancy Mayer-Whittington
> Clerk of the Court
> United States District Court
>   for the District of Columbia
> United States Courthouse
> 333 Constitution Avenue, N.W., Room 1225
> Washington, D.C.  20001

I also certify that a copy of the foregoing Notice of Removal was served on counsel via

overnight mail to:

> Eric Menhart
> CyberLaw P.C.
> 1200 G. Street, N.W., Suite 800
> Washington, D.C. 20005
> 202-434-8711 (telephone)
> 240-539-6235 (facsimile)
> Eric.menhart@cyberlaw.pro
>
> *Counsel for Plaintiff Chmiel*

> _____
> Samir Jain (D.C. Bar No. 483173)
> WILMER CUTLER PICKERING HALE &
>   DORR LLP
> 1875 Pennsylvania Avenue, N.W.
> Washington, D.C. 20006
> 202-663-6000 (telephone)
> 202-663-6363 (facsimile)
> Samir.Jain@wilmerhale.com
>
> *Counsel for Defendant mTLD, Ltd.*

8

IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| COSTANTINE G. ROUSSOS<br>950 S. Flower St #1404, Los Angeles, CA 90015<br><br>PAUL CHMIEL<br>PC Aero Corp., 12607 Ashcliff Dr., Houston, TX 77082<br><br>CHRIS ASTON JAMES<br>PO Box 85, Church Point, New South Wales, 2105, Australia<br><br>ERWIN MAHROUG<br>Nijenrodeweg 4, 3077ES, Rotterdam, Netherlands<br><br>     Plaintiffs,<br><br>     v.<br><br>SEDO.COM, LLC<br>161 First Street, 4th Floor, Cambridge, MA 02142<br><br>     Serve:<br>     Ulrich Essman<br>     161 First Street, 4th Floor, Cambridge, MA 02142<br><br>mTLD, LTD.<br>1875 Pennsylvania Ave. NW, Washington, DC 20006<br><br>     Serve:<br>     J. Beckwith Burr, Wilmer Cutler LLP<br>     1875 Pennsylvania Ave., NW, Washington, DC 20006<br><br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 08 000428<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs, Costantine G. Roussos, Chris Aston James, Paul Chmiel, and Erwin Mahroug,

through counsel, Eric Menhart and CyberLaw® P.C. file this suit against Defendants Sedo.com,

LLC ("Sedo") and mTLD, Ltd. ("mTLD") and state as follows:

### Introduction

Plaintiffs, bidders in an Internet auction provided by Defendant Sedo.com, LLC ("Sedo")

for certain domain names under the control of mTLD, Ltd. ("mTLD"), bring this suit to recover

the specific performance of names rightfully purchased by Plaintiffs at auction and for damages

arising from the Defendants' breach of contract, negligence and other causes of action.

Defendants are liable for withholding property lawfully obtained by Plaintiffs and for

failing to adhere to the terms of the sales contracts and their respective terms of service.

Defendants were also negligent in implementing the auction which was subject to bidding

problems that were readily foreseeable and preventable.


### Jurisdiction & Venue

1.       This Court has jurisdiction over this Complaint pursuant to D.C. Code § 11-921(a)(6).

2.       This Court has jurisdiction over Defendant mTLD, which maintains an office in

Washington, D.C., pursuant to D.C. Code § 13-422. Defendant mTLD is further subject to

jurisdiction in this Court pursuant to D.C. Code § 13-423 (1), and (2) because mTLD transacts

business in the District of Columbia and contracts to supply services in the District of Columbia.

3.       This Court has jurisdiction over Defendant Sedo, pursuant to D.C. Code § 13-423 (1),

(2), (3), and (6) because Sedo transacts business in the District of Columbia, contracts to supply

services in the District of Columbia, has caused tortious injury in the District of Columbia by an

act or omission in the District of Columbia, and because Sedo contracted with mTLD to insure or

act as surety for property, risk, contract, obligation, or agreement located, executed, or to be

performed within the District of Columbia at the time of contracting.

2

4.     Because many of the acts described in Plaintiffs' complaint occurred within Washington, D.C., venue is appropriate in this Court.

## The Parties

5.     Plaintiff Costantine G. Roussos is an individual residing in Los Angeles, California.

6.     Plaintiff Paul Chmiel is an individual residing in Houston, Texas.

7.     Plaintiff Chris Aston James is an individual residing in Church Point, New South Wales, Australia.

8.     Plaintiff Erwin Mahroug is an individual residing in Rotterdam, Netherlands.

9.     All Plaintiffs participated in a domain name auction held by Sedo, commencing on November 28, 2007. Each Plaintiff lawfully won at least one domain name at auction which the Defendants refuse to deliver.

10.    Defendant Sedo is known as one of the primary online marketplaces for buying and selling domain names and websites.

11.    Headquartered in Cambridge, Massachusetts, and doing business throughout the United States, including Washington, D.C., Sedo proclaims that it has assembled the world's largest database of domain names for sale, with more than seven million listings.

12.    Sedo normally earns a ten percent (10%) commission by charging fees for the sales consummated by auction via its site. The higher a sales price, the higher Sedo's commission.

13.    Defendant mTLD, also commonly referred to as "dotMobi," is a consortium based in Dublin, Ireland with offices in Washington, DC[1] and Beijing, and provider of the .mobi Internet domain name (.mobi).

---

[1] mTLD proclaims its District of Columbia citizenship in numerous press releases and on its website: http://mtld.mobi/node/889.

14.    mTLD touts itself as unique among domain name providers, in that it ensures that services and sites developed around .mobi are optimized for use by mobile devices so on-the-go consumers can have confidence that an Internet site or service will work on their mobile phones or similar mobile devices.

## Definitions & Background

15.    Consistent with industry standards, the following terms have the following meanings at all times relevant to the Plaintiffs' Complaint:

16.    A "domain name" is a name that identifies a computer or computers on the Internet. These names appear as a component of a web site's URL, as in, for example: http://www.dccourts.gov. This type of domain name is sometimes called a "hostname."

17.    A "Top Level Domain" ("TLD") is the last part of an Internet domain name; the letters which follow the final dot of any domain name. For example, in the domain name http://www.dccourts.gov, the top-level domain is ".GOV."

18.    All domain names include the name of a TLD and all domain names are associated with *only* one TLD. The number of TLDs are strictly limited by contract and international regulation. ".MOBI," is the primary TLD at issue in this suit.

19.    A domain name "registrant" is a person or entity to whom a domain name has been assigned or registered.

20.    A domain name "registrar" is a company or other entity that registers domain names within one or more TLDs to registrants and thereafter maintains records identifying which persons have registered which domain names. Such services are usually fee-based. Defendant mTLD is the registrar of the TLD ".MOBI."

21.    A domain name "registry," is a company or organization which converts domain names to IP addresses and manages the registration of domain names within the top level domains for which it is responsible. This may include maintaining a master database list for one or more TLDs containing information such as the domain names that have been registered, the registrar that issued the registration for that domain name, and the period of time during which the registration for that domain name is effective. A registry may be potentially distinct from a domain name registrar.

22.    Domain names are unique because they have elements typically seen in real property. Like property, domain names are totally unique from one another and unlike any other "parcel" available in the world.

23.    Just as different parcels of property may have different monetary value based on location, size, quality, and other factors, certain domain names are considered more valuable that others based on their length, a common word or words within the name, popularity of Internet search terms, TLD extension and other factors.

24.    Despite being totally unique, like real property, domain names are also like goods, because they may easily be bought, sold, resold, and "moved" from owner to owner. Subsequent owners may modify the domain names to point to different computers on the Internet at the owner's direction.

## Relevant Facts

25.    In September, 2007, mTLD announced that it would hold a series of three monthly online auctions for "premium" domain names at the Sedo website, Sedo.com. mTLD defined its "premium" names as a set of more than 5,500 commonly used words that were likely to be most

valuable on the open market. Examples of such names to be auctioned included: music.mobi,

pictures.mobi, and hiphop.mobi.

26.     mTLD made much of the fact that it was the first domain company to offer selected

premium names directly to the market via an auction process rather than a traditional "first come,

first served" process, traditionally used by other registrars.

27.     Sedo's auctions run similarly to a live auction. There is a limited time period to place

bids. Different parties bidding against one another help determine the "fair market value" of the

item at auction. When time expires, or the auctioneer determines that the bidding has reached its

conclusion, the goods or property are declared sold, the winning bidder is contractually bound to

purchase the goods at the final price and the seller of the goods is contractually bound to sell the

property to the bidder for the auction price.

28.     Sedo's online auctions are run similarly to the popular consumer auction site, eBay.

Because Sedo's auctions are handled entirely "online," at the Sedo web site, there are slight

differences to the standard auctioning practices.

29.     The first primary difference between a live auction and an online auction is the fact

that there is no live auctioneer. Instead, the auctions are handled electronically by computer

processes programmed and administered only by Sedo.

30.     Instead of the traditional "falling of the hammer," announcing the close of the

auction, auctions are closed when the computer determines that the predetermined amount of

time for the auction has expired. Once such a point has been reached, the "auction page" will

declare that the auction has closed. Other computer processes are typically triggered

synonymously. For example, once an auction has closed, Sedo's auction software will send an

invoice to the winning bidder via e-mail, notifying the bidder that he or she has won the auction and often providing payment and other instructions designed to efficiently consummate the sale.

31.    Second, unlike a live auction, where bidders are all physically present at the sale and immediately privy to all auctioneer communications, the Sedo auction is only available online. The auction welcomed bidders from across the world and relies upon non-real-time communications, such as e-mail, to communicate with bidders.

32.    Sales of the selected domains were scheduled to commence with the first auction on September 26, 2007, also the first anniversary of .mobi's general availability. Two additional premium auctions were scheduled to follow in October 2007 and November 2007. These auctions were indeed held on October 16, 2007 and November, 28, 2007, respectively.

33.    This third auction, beginning on November 28, 2007, and originally scheduled to close on "Wednesday, December 5th at 12pm EST," is the subject of this present suit.

34.    Like the first two auctions at Sedo.com, all one hundred domain name sales were scheduled to end at the same time in the third auction.

35.    The auction started at the scheduled time and closed as expected, with the respective auction pages for each of the domain names notifying bidders that time had expired and that the "Auction ended: Dec/05/07 12:00 PM EST."

36.    Further verifying that the auction had closed, many, if not all, of the one hundred winning bidders, including Plaintiffs, duly received their respective "winning bid notifications" from Sedo for each of the one hundred names at the close of the auction.

37.    Plaintiff, Costantine G. Roussos received two separate winning notices for the domain name music.mobi.

38.    Plaintiff, Paul Chmiel received five winning notices for the domain names sports.mobi, video.mobi, videos.mobi, photo.mobi, and photos.mobi.

39.    Plaintiff, Chris Aston James received two winning notices for the domain names fashion.mobi and sport.mobi.

40.    Plaintiff Erwin Mahroug received a winning notice for the domain name hiphop.mobi.

41.    Despite the declaration to the Plaintiffs and the public at large that the auction was closed and that time for bidding had expired, Sedo soon attempted to "reopen" the auction in hopes that the "premium" names would fetch a higher price, synonymously resulting in higher commissions and revenues to Sedo and mTLD.

42.    Defendants attempted to drive up the number of bidders in the auction, and in turn the prices of the names at auction, by sending out and posting mass promotions to current bidders, potential bidders, and the Internet as a whole.

43.    Sedo sent e-mails to bidders and other members in its records as to its decision to restart the auction. Sedo stated that that its web servers experienced site resolution issues at the end of the auction.

44.    Sedo claimed that that certified offers were placed and recorded in its database but were not displayed on the auction site. Sedo further explained that because the auctions were marked as closed, the automated "winning bidder" notices, which also contained domain ownership transfer information, were erroneously sent to bidders.

45.    Despite already receiving an invoice declaring him the winner, Plaintiff Roussos received further e-mails from Sedo advising that the highest bid at the set closing time was not

binding because Sedo's system was down at the time the auction closed, and that the auction would be "extended" until 3 PM EST on December 5, 2007.

46.     Sedo requested that the "winning bidder" e-mail notifications be disregarded and stated that the "transfer and corresponding documentation have been cancelled from our system."

47.     Sedo also posted a notice on its web site, entitled ".mobi Auction Will Be Extended," with similar advisory content as included in the email to Roussos.

48.     Email notices were also sent to bidders from mTLD, entitled "IMPORTANT AUCTION UPDATE," alerting that the auction would be extended due to "problems with Sedo's server."

49.     The mTLD site also issued an official blog post on its site, announcing "NEWSFLASH - Auction has been extended!"

50.     Plaintiff Roussos immediately objected to the restart of the auction via e-mails to Sedo support members.

51.     Despite Plaintiffs' objections, the auction was restarted, and Sedo's software automatically entered proxy bids on behalf of at least three of the Plaintiffs in the "restarted auction."

52.     While Plaintiff Mahroug was successful in securing hiphop.mobi in the restarted auction, albeit for a higher price, Plaintiffs Roussos, Chmiel and James were not successful in securing the names they had originally won and for which they were originally invoiced.

53.     Plaintiff James, who resides in Australia, had treble checked his accounts and invoice notices after he won his two domain names at the original auction. James retired to sleep at approximately 4:30 A.M. GMT.

9

54.     Bidder James did not participate in the second auction, but rather woke up the following morning to learn that the auction was restarted. Because he did not participate in the "restart auction," fashion.mobi and sport.mobi were awarded to other bidders.

55.     Despite the numerous problems with Defendants' conduct and the auction platform itself, Sedo attempted to quickly consummate the sales as concluded in the "restarted auction," requiring payments from bidders within five days from the end of the restarted auction.

56.     In the days after the auction finally closed, Sedo and mTLD received numerous complaints about Defendants' conduct from bidders in both the "original" and "restart" auctions.

57.     mTLD subsequently announced that it was cancelling the auction altogether, and later attempted to reschedule the entire auction for January 23, 2008, which intended to include the re-auction of Plaintiffs' property. While this plan was eventually abandoned, it has not been ruled out as a possibility in the future.

58.     From late December of 2007 to mid January of 2008 Defendants made trivial efforts to resolve complaints by holding roundtable discussions with bidders from both auctions. Plaintiffs, attempting to resolve the disputes in good faith, actively participated in the roundtable discussions.

59.     After much negotiation, the roundtable "compromise" proposed by Defendants to Plaintiffs and other bidders was to offer each domain name featured in the auction to anyone that was willing to pay the highest price received in either the "original" or "restart" auction.

60.     The compromise proposal ignored the fact that Plaintiffs were the rightful owners of the various domain names and still would have assured Defendants their highest possible commissions. This action follows.

## Count I: Breach of Contract

61.     As to each of the causes of action contained herein, Plaintiffs reallege and incorporate by reference all of the allegations contained in this Complaint.

62.     Defendants are liable for common law breach of contract. Defendants' unlawful conduct includes, but is not limited to, breaching the contracts Plaintiffs had in place with the seller and auctioneer to purchase the domain names by delaying delivery of the names and attempting to reschedule auctions for names that were already sold. Plaintiffs suffered damages as a result of Defendants' breaches.

## Count II: Negligence

63.     Plaintiffs allege that Defendants are liable for common law negligence because the Defendants owed a certain duty to Plaintiffs, Defendants breached this duty, and Defendants' breach was the proximate cause of the Plaintiffs' injuries.

64.     mTLD had a duty to investigate Sedo's fitness to administer the auction, Sedo failed to appropriately prepare to meet the technical needs of the auction, and Plaintiffs' property has been affected by the aftereffects of this decision. Plaintiffs suffered damages as a result.

65.     Sedo breached its duty to Plaintiffs by advertising its ability to provide auction services to Plaintiffs and breaching its duty by failing to adequately prepare for readily foreseeable challenges the auction would present. These actions were the cause of Plaintiffs' injuries and led to Plaintiffs' damages.

### Count III: Tortious Interference with Contractual Relations

66.     Defendants are liable for tortious interference with contractual relations because both Defendants knew of the existence of a contract, both had knowledge of the terms of a contract, both Defendants intentionally procured breach of the contract and Plaintiffs sustained damages resulting from the breach.

67.     Both Defendants are interfering with Plaintiffs' contractual relations. mTLD is interfering with Plaintiffs' contract with Sedo, which grants Plaintiff the right to acquire their respective domain names via Sedo's auction. mTLD is unlawfully holding the domain names, in violation of Sedo's agreement with Plaintiffs.

68.     Sedo is interfering with Plaintiffs' contract with mTLD by agreeing to rerun the auctions and not allowing Plaintiffs to pay for their lawfully won property.

### Count IV: Civil Conspiracy

69.     Defendants are liable for civil conspiracy because there was an agreement between Defendants to participate in an unlawful manner that caused injury to Plaintiffs and which was pursuant to and in furtherance of a common scheme.

70.     Defendants Sedo and mTLD worked together to encourage additional bidders to participate in an auction that had already closed, and then reopened the auction in an effort to increase prices and the resulting fees collected by mTLD and Sedo as a result of the sales. Plaintiffs suffered actionable damages as a result.

### Count V: Wrongful Conversion

71.    Defendants are liable for wrongful conversion because Defendants participated in an unlawful exercise of ownership, dominion, or control of the property of Plaintiffs in denial of Plaintiffs' rights in the property.

72.    Specifically, mTLD has retained control of the domains lawfully purchased by Plaintiffs and has considered taking Plaintiffs' lawful property to auction again, despite Plaintiffs' objections to the contrary. Plaintiffs have suffered damages as a result.

### Count VI: Fraudulent Misrepresentation

73.    Defendants are liable for fraudulent misrepresentation because the Defendants made a false representation with respect to a material fact, made with knowledge of its falsity, and with intent to deceive, and Plaintiffs relied upon the representation.

74.    Defendants heavily promoted the auction events and Sedo's ability to provide the Internet auction services necessary to auction the names. Despite these claims, Defendants did not make the industry-standard modifications necessary to accommodate the foreseeable expected web traffic. Plaintiffs were harmed by this representation when they relied on Sedo's statements in bidding on the auction.

### Count VII: Promissory Estoppel

75.    Defendants are liable for promissory estoppel, because Defendants made promises, which reasonably induced reliance by the Plaintiffs, and which resulted in a detriment to Plaintiff.

13

76.    Defendants heavily advertised and claimed that the auctions to be provided would be professionally managed, and provided certain written promises as well, via press release and other public communication. Plaintiffs relied on Defendants' statements to their detriment, leading to damages.

## Count VIII: Unjust Enrichment

77.    Defendants are liable for unjust enrichment, because the Plaintiffs conferred a benefit on Defendants, the Defendant retained the benefits conferred by Plaintiffs, and the circumstances dictate that the Defendants' enrichment is unjust.

78.    Plaintiffs participated in the Defendants' auction, helping to produce higher prices for the names at auction. Defendants violated contractual terms binding the parties by failing to award the names the Plaintiffs lawfully won, and Defendants will almost certainly benefit from higher prices in any subsequent auction due to the increased exposure of the names at issue in this case, and the .mobi auctions, generally.

## Count IX: Violation of Consumer Protection Act

79.    Defendants are liable under the District of Columbia Consumer Protection Act for their actions.

80.    Defendants represented that auction services were of a particular standard, quality, grade, style, or model, when in fact they were of another, in violation of D.C. Code § 28-3904.

81.    Defendants further violated that statute by advertising or offering goods or services without the intent to sell them or without the intent to sell them as advertised or offered; advertising or offering goods or services without supplying reasonably expected public demand;

14

misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a transaction and similar actions in violation of the Consumer Protection Act.

### Prayer for Relief

Plaintiffs seek relief from Defendants, jointly and severally, as follows:

1.     *Specific performance* of the delivery of each of the unique domain names music.mobi, sports.mobi, video.mobi, videos.mobi, photo.mobi, photos.mobi, fashion.mobi, sport.mobi and hiphop.mobi by Defendants to each Plaintiff, according to the price on each respective invoice each Plaintiff received in the first .mobi auction which featured the respective domain names in question.

2.     Compensatory damages in excess of $5,000, the exact amount to be proven at trial, for lost compensation and opportunity;

3.     Pre-judgment and post-judgment interest;

4.     Compensation of reasonable costs and attorneys fees as determined by the court or pursuant to D.C. Code § 28-3905(k)(1)(B);

5.     Punitive damages, pursuant to D.C. Code § 28-3905(k)(1)(C);

6.     Treble the amount of all damages, pursuant to D.C. Code § 28-3905(k)(1)(A);

7.     Injunctive relief, precluding Defendants from similar actions in the future; and

8.     Such further relief as this Court may deem just and proper.

### Jury Trial Demand

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

Eric Menhart (D.C. Bar No. 975896)
CyberLaw® P.C.
1200 G St NW Suite 800
Washington, DC 20005
Phone: 202-434-8711
Fax: 240-539-6235
http://www.cyberlaw.pro

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **PAUL CHMIEL** )<br>PC Aero Corp., 12607 Ashclift Dr., Houston, TX 77082 )<br>)<br>    **Plaintiff,** )<br>)<br>    v. )<br>)<br>**SEDO.COM, LLC** )<br>161 First Street, 4th Floor, Cambridge, MA 02142 )<br>)<br>**mTLD, LTD.** )<br>1875 Pennsylvania Ave. NW, Washington, DC 20006 )<br>)<br>**JEAN ROMAIN COLOMBANI** )<br>39 Rue de Celony, 13100 Aix-en-Provence, France )<br>)<br>    **Defendants** )<br>) | **Case No.**<br><br>**2008 CA 000428** |

### FIRST AMENDED COMPLAINT

Plaintiff Paul Chmiel, through counsel, Eric Menhart and CyberLaw P.C. file this suit

against Defendants Sedo.com, LLC ("Sedo"), mTLD, Ltd. ("mTLD") and Jean Romain

Colombani ("Colombani") and state as follows:

### Introduction

Plaintiff, a bidder in an Internet auction provided by Defendant Sedo.com, LLC ("Sedo")

for certain domain names under the control of mTLD, Ltd. ("mTLD"), brings this suit to recover

the specific performance of names rightfully purchased by Plaintiff at auction and for damages

arising from the Defendants' breach of contract, negligence and other causes of action.

Defendants are liable for withholding property lawfully obtained by Plaintiff and for failing to adhere to the terms of the sales contracts and their respective terms of service. Defendants were also negligent in implementing the auction that was subject to bidding problems that were readily foreseeable and preventable.

## Jurisdiction & Venue

1.    This Court has jurisdiction over this Complaint pursuant to D.C. Code § 11-921(a)(6).

2.    This Court has jurisdiction over Defendant mTLD, which maintains an office in Washington, D.C., pursuant to D.C. Code § 13-422. Defendant mTLD is further subject to jurisdiction in this Court pursuant to D.C. Code § 13-423 (1), and (2) because mTLD transacts business in the District of Columbia and contracts to supply services in the District of Columbia.

3.    This Court has jurisdiction over Defendant Sedo, pursuant to D.C. Code § 13-423 (1), (2), (3), and (6) because Sedo transacts business in the District of Columbia, contracts to supply services in the District of Columbia, has caused tortious injury in the District of Columbia by an act or omission in the District of Columbia, and because Sedo contracted with mTLD to insure or act as surety for property, risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting.

4.    This Court has jurisdiction over Defendant Romain pursuant to D.C. Code § 13-423 (1) and (3) because Romain transacts business in the District of Columbia, and has caused tortious injury in the District of Columbia by an act or omission in the District of Columbia.

5.    Because many of the acts described in Plaintiff's' complaint occurred within Washington, D.C., venue is appropriate in this Court.

2

**The Parties**

6.      Plaintiff Paul Chmiel is an individual residing in Houston, Texas.

7.      Plaintiff participated in a domain name auction held by Sedo, commencing on November 28, 2007. Plaintiff Chmiel won five domain names at auction, which the Defendants refuse to deliver. The names won by Chmiel were sports.mobi, video.mobi, videos.mobi, photo.mobi, and photos.mobi.

8.      Paul Chmiel is an individual with an demonstrated interest in ".mobi" domain names. He helped to co-found the website "mobility.mobi," which allows for discussion and promotion of mobile web browsing. He has also developed numerous ".mobi" sites in an attempt to improve the mobile web.

9.      Further demonstrating his commitments to ".mobi" development, Plaintiff Chmiel is also a member and supporter of "The dotMobi Advisory Group" (MAG). MAG is an accredited independent not-for-profit industry forum with the goal of ensuring that the dotMobi Top Level Domain (.mobi) is operated in the best interests of the global dotMobi community and the Internet at large. Mr. Chmiel pays a substantial membership fee each year to participate in the group.

10.     Defendant Sedo is known as one of the primary online marketplaces for buying and selling domain names and websites.

11.     Headquartered in Cambridge, Massachusetts, and doing business throughout the United States, including Washington, D.C., Sedo proclaims that it has assembled the world's largest database of domain names for sale, with more than seven million listings.

12.     Sedo normally earns a ten percent (10%) commission by charging fees for the sales consummated by auction via its site. The higher a sales price, the higher Sedo's commission.

13.    Defendant mTLD, also commonly referred to as "dotMobi," is a consortium based in Dublin, Ireland with offices in Washington, DC[1] and Beijing, China, and provider of the .mobi Internet domain name (.mobi).

14.    mTLD touts itself as unique among domain name providers, in that it ensures that services and sites developed around .mobi are optimized for use by mobile devices so on-the-go consumers can have confidence that an Internet site or service will work on their mobile phones or similar mobile devices.

15.    Defendant Jean Romain Colombani is a citizen of France that is currently in possession of the domain name video.mobi. The name was transferred to him by Defendants Sedo and mTLD after this suit had been filed and Defendants mTLD and Sedo were aware of the suit.

## Definitions & Background

16.    Consistent with industry standards, the following terms have the following meanings at all times relevant to the Plaintiff's Complaint:

17.    A "domain name" is a name that identifies a computer or computers on the Internet. These names appear as a component of a web site's URL, as in, for example: http://www.dccourts.gov. This type of domain name is sometimes called a "hostname."

18.    A "Top Level Domain" ("TLD") is the last part of an Internet domain name; the letters which follow the final dot of any domain name. For example, in the domain name http://www.dccourts.gov, the top-level domain is ".GOV."

---

[1] mTLD proclaims its District of Columbia citizenship in numerous press releases and on its website: http://mtld.mobi/node/889.

19.    All domain names include the name of a TLD and all domain names are associated with *only* one TLD. The number of TLDs are strictly limited by contract and international regulation. ".MOBI," is the primary TLD at issue in this suit.

20.    A domain name "registrant" is a person or entity to whom a domain name has been assigned or registered.

21.    A domain name "registrar" is a company or other entity that registers domain names within one or more TLDs to registrants and thereafter maintains records identifying which persons have registered which domain names. Such services are usually fee-based. Defendant mTLD is the registrar of the TLD ".MOBI."

22.    A domain name "registry," is a company or organization which converts domain names to IP addresses and manages the registration of domain names within the top level domains for which it is responsible. This may include maintaining a master database list for one or more TLDs containing information such as the domain names that have been registered, the registrar that issued the registration for that domain name, and the period of time during which the registration for that domain name is effective. A registry may be potentially distinct from a domain name registrar.

23.    Domain names are unique because they have elements typically seen in real property. Like property, domain names are totally unique from one another and unlike any other "parcel" available in the world.

24.    Just as different parcels of property may have different monetary value based on location, size, quality, and other factors, certain domain names are considered more valuable that others based on their length, a common word or words within the name, popularity of Internet search terms, TLD extension and other factors.

25.    Despite being totally unique, like real property, domain names are also like goods, because they may easily be bought, sold, resold, and "moved" from owner to owner. Subsequent owners may modify the domain names to point to different computers on the Internet at the owner's direction.

### Relevant Facts

26.    In September, 2007, mTLD announced that it would hold a series of three monthly online auctions for "premium" domain names at the Sedo website, Sedo.com. mTLD defined its "premium" names as a set of more than 5,500 commonly used words that were likely to be most valuable on the open market. Examples of such names to be auctioned included: music.mobi, pictures.mobi, and hiphop.mobi.

27.    mTLD made much of the fact that it was the first domain company to offer selected premium names directly to the market via an auction process rather than a traditional "first come, first served" process, traditionally used by other registrars.

28.    Sedo's auctions run similarly to a live auction. There is a limited time period to place bids. Different parties bidding against one another help determine the "fair market value" of the item at auction. When time expires, or the auctioneer determines that the bidding has reached its conclusion, the goods or property are declared sold, the winning bidder is contractually bound to purchase the goods at the final price and the seller of the goods is contractually bound to sell the property to the bidder for the auction price.

29.    Sedo's online auctions are run similarly to the popular consumer auction site, eBay. Because Sedo's auctions are handled entirely "online," at the Sedo web site, there are slight differences to the standard auctioning practices.

30.    The first primary difference between a live auction and an online auction is the fact that there is no live auctioneer. Instead, the auctions are handled electronically by computer processes programmed and administered only by Sedo.

31.    Instead of the traditional "falling of the hammer," announcing the close of the auction, auctions are closed when the computer determines that the predetermined amount of time for the auction has expired. Once such a point has been reached, the "auction page" will declare that the auction has closed. Other computer processes are typically triggered synonymously. For example, once an auction has closed, Sedo's auction software will send an invoice to the winning bidder via e-mail, notifying the bidder that he or she has won the auction and often providing payment and other instructions designed to efficiently consummate the sale.

32.    Second, unlike a live auction, where bidders are all physically present at the sale and immediately privy to all auctioneer communications, the Sedo auction is only available online. The auction welcomed bidders from across the world and relies upon non-real-time communications, such as e-mail, to communicate with bidders.

33.    Sales of the selected domains were scheduled to commence with the first auction on September 26, 2007, also the first anniversary of .mobi's general availability. Two additional premium auctions were scheduled to follow in October 2007 and November 2007. These auctions were indeed held on October 16, 2007 and November, 28, 2007, respectively.

34.    This third auction, beginning on November 28, 2007, and originally scheduled to close on "Wednesday, December 5th at 12pm EST," is the subject of this present suit.

35.    Like the first two auctions at Sedo.com, all one hundred domain name sales were scheduled to end at the same time in the third auction.

36.    The auction started at the scheduled time and closed as expected, with the respective auction pages for each of the domain names notifying bidders that time had expired and that the "Auction ended: Dec/05/07 12:00 PM EST."

37.    Further verifying that the auction had closed, many, if not all, of the one hundred winning bidders, including Plaintiff, duly received their respective "winning bid notifications" from Sedo for each of the one hundred names at the close of the auction.

38.    Plaintiff Paul Chmiel received five winning notices for the domain names sports.mobi, video.mobi, videos.mobi, photo.mobi, and photos.mobi.

39.    Despite the declaration to the Plaintiff and the public at large that the auction was closed and that time for bidding had expired, Sedo soon attempted to "reopen" the auction in hopes that the "premium" names would fetch a higher price, synonymously resulting in higher commissions and revenues to Sedo and mTLD.

40.    Defendants attempted to drive up the number of bidders in the auction, and in turn the prices of the names at auction, by sending out and posting mass promotions to current bidders, potential bidders, and the Internet community as a whole.

41.    Sedo sent e-mails to bidders and other members in its records as to its decision to restart the auction. Sedo stated that that its web servers experienced site resolution issues at the end of the auction.

42.    Sedo claimed that that certified offers were placed and recorded in its database but were not displayed on the auction site. Sedo further explained that because the auctions were marked as closed, the automated "winning bidder" notices, which also contained domain ownership transfer information, were erroneously sent to bidders.

8

43.    Certain bidders received further e-mails from Sedo advising that the highest bid at the set closing time was not binding because Sedo's system was down at the time the auction closed, and that the auction would be "extended" until 3 PM EST on December 5, 2007.

44.    Sedo requested that the "winning bidder" e-mail notifications be disregarded and stated that the "transfer and corresponding documentation have been cancelled from our system."

45.    Sedo also posted a notice on its web site, entitled ".mobi Auction Will Be Extended."

46.    Email notices from mTLD entitled "IMPORTANT AUCTION UPDATE," were also sent to all bidders, alerting that the auction would be extended due to "problems with Sedo's server."

47.    The mTLD site also issued an official blog post on its site, announcing "NEWSFLASH - Auction has been extended!"

48.    Some bidders immediately objected to the restart of the auction via e-mails to Sedo support members and on Internet message boards.

49.    The auction was restarted, and Sedo's software automatically entered proxy bids on behalf of numerous bidders in the "restarted auction."

50.    Plaintiff Chmiel was not successful in securing the names they he had originally won and for which he was originally invoiced.

51.    Despite the numerous problems with Defendants' conduct and the auction platform itself, Sedo attempted to quickly consummate the sales as concluded in the "restarted auction," requiring payments from bidders within five days from the end of the restarted auction.

52.    In the days after the auction finally closed, Sedo and mTLD received numerous complaints about Defendants' conduct from bidders in both the "original" and "restart" auctions.

9

53.     mTLD subsequently announced that it was cancelling the auction altogether, and later

attempted to reschedule the entire auction for January 23, 2008, which intended to include the re-

auction of Plaintiff's property. While this plan was eventually abandoned, it has not been ruled

out as a possibility in the future.

54.     From late December of 2007 to mid January of 2008 Defendants made trivial efforts

to resolve complaints by holding roundtable discussions with bidders from both auctions.

Plaintiff, attempting to resolve the disputes in good faith, actively participated in the roundtable

discussions.

55.     After much negotiation, the roundtable "compromise" proposed by Defendants to

Plaintiff and other bidders was to offer each domain name featured in the auction to anyone that

was willing to pay the highest price received in either the "original" or "restart" auction.

56.     The compromise proposal ignored the fact that Plaintiff Chmiel was the rightful

owners of the various domain names but still would have assured Defendants their highest

possible commissions.

57.     On February 22, 2008, with full knowledge that this suit had been filed and that the

name was in dispute, mTLD transferred the domain name "video.mobi" to Defendant Colombani

via an escrow system maintained by Sedo.

58.     Defendants mTLD and Sedo made the transfer of "video.mobi" with full knowledge

of this pending action, and Defendant Colombani accepted the name despite knowing that

ownership of the name was in dispute based on his participation in roundtable discussions.

## Count I: Breach of Contract

59.    As to each of the causes of action contained herein, Plaintiff realleges and incorporates by reference all of the allegations contained in this Complaint.

60.    Defendants are liable for common law breach of contract. Defendants' unlawful conduct includes, but is not limited to, (1) breaching the contracts Plaintiff had in place with the seller and auctioneer to purchase the domain names by delaying delivery of the names and (2) attempting to reschedule auctions for names that were already sold and (3) transferring disputed names to third parties. Plaintiff suffered damages as a result of Defendants' breaches.

## Count II: Negligence

61.    Plaintiff alleges that Defendants are liable for common law negligence because the Defendants owed a certain duty to Plaintiff, Defendants breached this duty, and Defendants' breach was the proximate cause of the Plaintiff's injuries.

62.    mTLD had a duty to investigate Sedo's fitness to administer the auction, Sedo failed to appropriately prepare to meet the technical needs of the auction, and Plaintiff's property has been affected by the aftereffects of this decision. Plaintiff suffered damages as a result.

63.    Sedo breached its duty to Plaintiff by advertising its ability to provide auction services to Plaintiff and breaching its duty by failing to adequately prepare for readily foreseeable challenges the auction would present. These actions were the cause of Plaintiff's injuries and led to Plaintiff's damages.

## Count III: Tortious Interference with Contractual Relations

64.     Defendants are liable for tortious interference with contractual relations because Defendants knew of the existence of a contract, had knowledge of the terms of a contract, Defendants intentionally procured breach of the contract and Plaintiff sustained damages resulting from the breach.

65.     Defendants are interfering with Plaintiff's contractual relations. mTLD is interfering with Plaintiff's contract with Sedo, which grants Plaintiff the right to his respective domain names via Sedo's auction. mTLD is unlawfully holding some of the domain names, in violation of Sedo's agreement with Plaintiff. mTLD has further transferred one of the disputed names without regard for this dispute.

66.     Sedo is interfering with Plaintiff's contract with mTLD by agreeing to rerun the auctions and not allowing Plaintiff to pay for his lawfully won property. Sedo has further transferred one of the disputed names without regard for this dispute.

## Count IV: Civil Conspiracy

67.     Defendants are liable for civil conspiracy because there was an agreement between Defendants to participate in an unlawful manner that caused injury to Plaintiff and which was pursuant to and in furtherance of a common scheme.

68.     Defendants Sedo and mTLD worked together to encourage additional bidders to participate in an auction that had already closed, and then reopened the auction in an effort to increase prices and the resulting fees collected by mTLD and Sedo as a result of the sales.

69.     All Defendants are liable for civil conspiracy because they agreed to transfer the domain name "video.mobi" despite this pending action.

12

70.    Plaintiff suffered actionable damages as a result.

## Count V: Wrongful Conversion

71.    Defendants are liable for wrongful conversion because Defendants participated in an unlawful exercise of ownership, dominion, or control of the property of Plaintiff's in denial of Plaintiff's rights in the property.

72.    Specifically, mTLD has retained control of the domains lawfully purchased by Plaintiff and has considered taking Plaintiff's lawful property to auction again, despite Plaintiff's objections to the contrary.

73.    Furthermore, mTLD and Sedo transferred the name "video.mobi" to Defendant Colombani when Chmiel had the right to purchase the property according to the invoice he received for the name.

74.    Plaintiff suffered actionable damages as a result.

## Count VI: Fraudulent Misrepresentation

75.    Defendants are liable for fraudulent misrepresentation because the Defendants made a false representation with respect to a material fact, made with knowledge of its falsity, and with intent to deceive, and Plaintiff relied upon the representation.

76.    Defendants mTLD and Sedo heavily promoted the auction events and Sedo's ability to provide the Internet auction services necessary to auction the names. Despite these claims, Defendants did not make the industry-standard modifications necessary to accommodate the foreseeable expected web traffic. Plaintiff was harmed by this representation when he relied on Sedo's statements in bidding on the auction.

### Count VII: Promissory Estoppel

77.    Defendants are liable for promissory estoppel, because Defendants made promises, which reasonably induced reliance by the Plaintiff, and which resulted in a detriment to Plaintiff.

78.    Defendants heavily advertised and claimed that the auctions to be provided would be professionally managed, and provided certain written promises as well, via press release and other public communication. Plaintiff relied on Defendants' statements to his detriment, leading to damages.

### Count VIII: Unjust Enrichment

79.    Defendants are liable for unjust enrichment, because the Plaintiff conferred a benefit on Defendants, the Defendant retained the benefits conferred by Plaintiff, and the circumstances dictate that the Defendants' enrichment is unjust.

80.    Plaintiff participated in the Defendants' auction, helping to produce higher prices for the names at auction. Defendants violated contractual terms binding the parties by failing to award the names the Plaintiff lawfully won, and Defendants will almost certainly benefit from higher prices in any subsequent auction due to the increased exposure of the names at issue in this case, and the .mobi auctions, generally.

### Count IX: Violation of Consumer Protection Act

81.    Defendants are liable under the District of Columbia Consumer Protection Act for their actions.

82.    Defendants represented that auction services were of a particular standard, quality, grade, style, or model, when in fact they were of another, in violation of D.C. Code § 28-3904.

14

83.    Defendants further violated that statute by advertising or offering goods or services without the intent to sell them or without the intent to sell them as advertised or offered; advertising or offering goods or services without supplying reasonably expected public demand; misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a transaction and similar actions in violation of the Consumer Protection Act.

### Prayer for Relief

Plaintiff seeks relief from Defendants, jointly and severally, as follows:

1.    *Specific performance* of the delivery of each of the unique domain names sports.mobi, video.mobi, videos.mobi, photo.mobi, photos.mobi by Defendants to Plaintiff, according to the price on each respective invoice Plaintiff received in the first .mobi auction which featured the respective domain names in question.

2.    Compensatory damages in excess of $5,000, the exact amount to be proven at trial, for lost compensation and opportunity;

3.    Pre-judgment and post-judgment interest;

4.    Compensation of reasonable costs and attorneys fees as determined by the court or pursuant to D.C. Code § 28-3905(k)(1)(B);

5.    Punitive damages, pursuant to D.C. Code § 28-3905(k)(1)(C);

6.    Treble the amount of all damages, pursuant to D.C. Code § 28-3905(k)(1)(A);

7.    Injunctive relief, precluding Defendants from similar actions in the future; and

8.    Such further relief as this Court may deem just and proper.

**Jury Trial Demand**

Plaintiff respectfully demands a trial by jury with respect to each claim in this Complaint.

Respectfully submitted,

_Eric J. Menhart_

---

Eric Menhart (D.C. Bar No. 975896)
CyberLaw P.C.
1200 G St NW Suite 800
Washington, DC 20005
Phone: 202-434-8711
Fax: 240-539-6235
http://www.cyberlaw.pro

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COSTANTINE G. ROUSSOS, et al. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No._____ |
| ) | |
| SEDO.com, LLC, ) | |
| ) | |
| mTLD, LTD. ) | |
| Defendants. ) | |

**DECLARATION OF CAROLINE GREER IN SUPPORT OF REMOVAL**

I, Caroline Greer, hereby declare as follows:

1.     I am the Director of Policy and Industry Relations of mTLD, LTD ("mTLD"), a private company limited by shares organized under the laws of Ireland, with its principal place of business in Dublin, Ireland.

2.     I am authorized to make this Declaration on behalf of mTLD. I have personal knowledge of the facts stated in this Declaration, and I could and would testify competently to them.

3.     The Internet Corporation for Assigned Names and Numbers ("ICANN") has appointed mTLD as the official global registry for the newly created .mobi top level domain. The registry is the master database of all domain names registered in the .mobi top level domain.

4.     In 2007, mTLD made available several hundred of these domains through a series of three online auctions hosted by Defendant Sedo. Specifically, between November 27, 2007,

and December 5, 2007, Sedo conducted an auction for 100 domain names, including the domain names photo.mobi, photos.mobi, sports.mobi, video.mobi, and videos.mobi.

5.    The bids for the domain names photo.mobi, photos.mobi, sports.mobi, video.mobi, and videos.mobi., in aggregate totaled over $75,000.  Consequently these domain names have a value in excess of $75,000.

I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

2

Executed on this 27th day of February, 2008

_Caroline Greer_
Caroline Greer

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
Costantine G. Roussos, et al.

88888

## DEFENDANTS
SEDO.COM, LLC, et al.

88888

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)**

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

Eric Menhart
CyberLaw P.C.
1200 G St NW Suite 800
Washington, DC 20005
202-434-8711

Case: 1:08-cv-00365
Assigned To : Kennedy, Henry H.
Assign. Date : 2/29/2008
Description: Contract

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

○ 2 U.S. Government
Defendant

○ 3 Federal Question
(U.S. Government Not a Party)

⊙ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ⊙ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○  **G.** *Habeas Corpus/*<br>*2255* | ○  **H.** *Employment*<br>*Discrimination* | ○  **I.** *FOIA/PRIVACY*<br>*ACT* | ○  **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○  **K.** *Labor/ERISA*<br>*(non-employment)* | ○  **L.** *Other Civil Rights*<br>*(non-employment)* | ◎  **M.** *Contract* | ○  **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

✔ 1 Original
Proceeding      ☒ 2 Removed
from State
Court      ○ 3 Remanded from
Appellate Court      ○ 4 Reinstated
or Reopened      ○ 5 Transferred from
another district
(specify)      ○ 6 Multi district
Litigation      ○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
28 U.S.C. Sec. 1332 - breach of contract

| **VII. REQUESTED IN**<br>**COMPLAINT** | ☐ CHECK IF THIS IS A CLASS<br>ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____<br>**JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☒   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S)**<br>**IF ANY**      (See instruction)      YES ☐      NO ☒      If yes, please complete related case form.

DATE  February 29, 2008      SIGNATURE OF ATTORNEY OF RECORD  _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


_PAUL CHHIEL_____
Plaintiff

        v.

Civil Action No.  **08 0365**

**FEB 2 9 2008**

_SEDO. COM, LLC, ET AL_____
Defendant


    The above entitled action, removed from the Superior Court for the District of Columbia,

has been filed and assigned to Judge **KENNEDY, JR. J. HHK** All counsel and/or pro se

litigants must include on any subsequent pleadings both the civil action number and the initials

of the judge assigned to this action.  (See preceding sentence for judge's initials).

    Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the

bar of this Court to appear, file papers or practice.  To assist the Clerk's Office in properly

recording all counsel of record, counsel for all parties must enter their appearance in accordance

with our Local Rule 83.6(a).  Timely compliance with this requirement will enable the Clerk's

Office to ensure prompt delivery of notices and orders.

    Finally, your attention is called to Local Rule 16.3, Duty to Confer.  This rule clearly

spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court

on a wide range of questions.

               NANCY MAYER-WHITTINGTON, CLERK

               By _Maureen Higgins_____
                  Deputy Clerk

cc: _ERIC MENHART_

                            929A
                            Rev. 7/02