**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PAUL CHMIEL,      ) | |
|      ) | |
| Plaintiff,      ) | Case No. 1:08-CV-00365 (HHK) |
|      ) | |
| v.      ) | |
|      ) | |
| SEDO.COM, LLC *et al.*,      ) | |
|      ) | |
| Defendants.      ) | |

**ANSWER OF DEFENDANT MTLD TOP LEVEL DOMAIN, LTD.**
**TO PLAINTIFF'S COMPLAINT AND CROSS-CLAIMS**
**AGAINST DEFENDANT SEDO.COM, LLC**

Defendant mTLD Top Level Domain, Ltd. ("mTLD"), by its attorneys, hereby submits its answer to Plaintiff's First Amended Complaint (the "Complaint"). mTLD denies any allegations in the Complaint not specifically admitted herein. Moreover, except as otherwise noted, mTLD denies each and every allegation contained in the Complaint as to Defendants Sedo.com, LLC ("Sedo") and Jean Romain Colombani for lack of sufficient knowledge or information to form a belief as to the truth of the averments.

**INTRODUCTION**

The first and second (unnumbered) Paragraphs of Plaintiff's Complaint contain conclusions of law to which no response is required. To the extent a response is required, mTLD admits that Plaintiff participated in internet auctions hosted by Defendant Sedo for authorization codes for certain domain names that were under the control of mTLD, but denies each and every other averment contained in the first and second unnumbered Paragraphs of the Complaint.

## JURISDICTION AND VENUE

1.      Paragraph 1 of the Complaint contains conclusions of law to which no response is required.

2.      mTLD denies that it maintains an office in Washington, D.C.  The remaining averments contained in Paragraph 2 of the Complaint state conclusions of law to which no response is required.  To the extent that any response is deemed necessary, mTLD denies such averments.

3.      Paragraph 3 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 3 of the Complaint and on that basis denies such averments.

4.      Paragraph 4 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 4 of the Complaint and on that basis denies such averments.

5.      Paragraph 5 of the Complaint contains conclusions of law to which no response is required.  To the extent that a response is required, mTLD denies the averment in Paragraph 5.

## THE PARTIES

6.      mTLD admits, on information and belief, that Plaintiff is an individual residing in Houston, Texas.

7.      mTLD denies each and every averment contained in Paragraph 7 of the Complaint, except that mTLD admits that Plaintiff Chmiel participated in auctions for domain name authorization codes hosted by Sedo, which began on November 28, 2007.

8.      mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 8 of the Complaint and therefore denies such averments.

9.      mTLD denies each and every averment contained in Paragraph 9 of the Complaint, except that mTLD admits that mobility.mobi is a member of the dotMobi Advisory Group, and that Plaintiff is a member of mobility.mobi. mTLD further admits that the dotMobi Advisory Group is an accredited independent not-for-profit industry forum with the stated goal of ensuring that the dotMobi top level domain is operated in the best interests of the global dotMobi community and the internet at large.

10.     mTLD admits the averments contained in Paragraph 10 of the Complaint.

11.     mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 11 and therefore denies such averments, except that mTLD admits on information and belief that Defendant Sedo is headquartered in Cambridge, Massachusetts. mTLD further admits on information and belief that Sedo claims to offer the world's largest selection of domain names, with more than seven million listings.

12.     mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 12 and therefore denies such averments.

13.     mTLD denies each and every averment in Paragraph 13 of the Complaint, including the averment set forth in footnote 1 to Paragraph 13, except that mTLD admits that it is a private company limited by shares, based in Dublin, Ireland, with an office in Beijing, China. mTLD also admits that it is also known as "dotMobi" and that it is the official registry for the ".mobi" top level domain.

14.    mTLD denies each and every averment contained in Paragraph 14 of the Complaint, except that mTLD admits that the .mobi top level domain is intended for use by websites that are optimized for access from mobile devices.

15.    mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 15 and therefore denies such averments, except mTLD admits that it entered into an agreement dated February 11, 2008 with Jean Romain Colombani, under which mTLD agreed to "release to [Jean Romain Colombani] the registration credentials" to video.mobi and that those credentials were transferred by February 26, 2008.

## DEFINITIONS AND BACKGROUND

16.    mTLD denies each and every averment in Paragraph 16.

17.    mTLD denies each and every averment in Paragraph 17, except that mTLD admits that a "domain name" is a name that corresponds to a specific IP address for an internet website.

18.    mTLD admits the averments contained in Paragraph 18.

19.    mTLD denies each and every averment in Paragraph 19, except that mTLD admits that each domain name contains only one top level domain.  mTLD further admits that .mobi is the primary top level domain at issue in this lawsuit.

20.    mTLD denies each and every averment in Paragraph 20, except that mTLD admits that a domain name "registrant" is a person or entity that has registered a domain name for a set period of time.

21.    mTLD denies each and every averment in Paragraph 21, except that mTLD admits that a registrar is a company that provides registration services to domain name registrants in the top level domains managed by the Internet Corporation for Assigned Names and Numbers ("ICANN"), maintains records of the registrant's contact information, and submits the technical information to a central directory known as the "registry."

22.      mTLD denies each and every averment in Paragraph 22, except that mTLD admits that a registry is the authoritative, master database of all domain names registered in a top level domain.  The registry maintains the master database and also generates the "zone file" that allows computers to route Internet traffic to and from top level domains anywhere in the world.  A registry is distinct from a registrar.

23.      mTLD denies each and every averment in Paragraph 23 of the Complaint.

24.      mTLD denies each and every averment in Paragraph 24 of the Complaint, except that mTLD admits that certain domain names may be considered more valuable than others based on a variety of factors.

25.      mTLD denies each and every averment in Paragraph 25 of the Complaint, except that mTLD admits that authorization codes for domain names may be transferred from one registrant to another.

## RELEVANT FACTS

26.      mTLD denies each and every averment in Paragraph 26 of the Complaint, except that mTLD admits that in September 2007, mTLD announced that Sedo would host three online auctions for authorization codes for domain names from a collection of 5,500 domain names based on commonly used words.

27.      mTLD denies each and every averment in Paragraph 27 of the Complaint, except that mTLD admits that it stated in an October 2007 announcement that it was the first domain company to offer the authorization codes for selected domain names through an online auction process rather than through a traditional first come, first served process.

28.      mTLD denies each and every averment in Paragraph 28 of the Complaint, except that mTLD admits that Sedo's online auctions have some common attributes with a live auction and that competing bids in an auction may help determine the fair market value of an auction item.

- 5 -

29.    mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 29 of the Complaint and therefore denies such averments.

30.    mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 30 of the Complaint and therefore denies such averments.

31.    mTLD denies each and every averment in Paragraph 31 of the Complaint, except that mTLD admits, on information and belief, that Sedo's auction software is programmed to automatically generate email notices to auction participants upon the occurrence of certain events.

32.    mTLD denies each and every averment in Paragraph 32 of the Complaint, except that mTLD (1) admits, on information and belief, that a Sedo auction may include bidders from many countries and may rely in part on email to communicate with bidders, and (2) lacks information or knowledge sufficient to form a belief as to the truth of the averment that "the Sedo auction is available only online" and on that basis denies the averment.

33.    mTLD denies each and every averment in Paragraph 33 of the Complaint, except that mTLD admits that auctions for the authorization codes for certain domain names were scheduled to commence on September 26, 2007, which was the first anniversary of the date on which .mobi became generally available.  mTLD further admits that two additional auctions were scheduled to follow and commenced on October 31, 2007 and November 28, 2007.

34.    mTLD denies each and every averment in Paragraph 34 of the Complaint, except that mTLD admits that the third auction, beginning on November 28, 2007, is the auction at issue in this lawsuit.

35.    mTLD denies each and every averment in Paragraph 35 of the Complaint.

36.    mTLD denies each and every averment in Paragraph 36 of the Complaint.

37.     mTLD denies each and every averment in Paragraph 37 of the Complaint, except that mTLD admits on information and belief that Plaintiff Chmiel and certain other bidders received computer-generated emails from Sedo sent by an automated process.

38.     mTLD denies each and every averment in Paragraph 38 of the Complaint, except that mTLD admits on information and belief that Plaintiff Chmiel received from Sedo computer-generated emails sent as a result of an automated process concerning the domain names photo.mobi, photos.mobi, sports.mobi, video.mobi, and videos.mobi.

39.     mTLD denies each and every averment in Paragraph 39 of the Complaint.

40.     mTLD denies each and every averment in Paragraph 40 of the Complaint.

41.     mTLD asserts that the documents referred to in Paragraph 41 speak for themselves. mTLD lacks sufficient knowledge or information to form a belief as to the truth of the other averments in Paragraph 41 of the Complaint and therefore denies such averments.

42.     mTLD asserts that the documents referred to in Paragraph 42 speak for themselves.

43.     mTLD asserts that the documents referred to in Paragraph 43 speak for themselves.

44.     mTLD asserts that the documents referred to in Paragraph 44 speak for themselves.

45.     mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 45 of the Complaint and therefore denies such averments.

46.     mTLD denies each and every averment in Paragraph 46 of the Complaint, except that mTLD admits that it sent emails to individuals in its database who had expressed interest in premium domain names and asserts that those emails speak for themselves.

47.     mTLD denies each and every averment in Paragraph 47 of the Complaint, except that mTLD admits that it issued a blog post on its website, which blog speaks for itself.

48.     mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 48 of the Complaint and therefore denies such averments.

49.     mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averments in Paragraph 49 of the Complaint and therefore denies such averments.

50.     mTLD denies each and every averment in Paragraph 50 of the Complaint, except that mTLD admits that Plaintiff Chmiel was not issued the authorization codes for any of the five domain names at issue in this lawsuit.

51.     mTLD denies each and every averment in Paragraph 51 of the Complaint, except that mTLD lacks sufficient knowledge or information to form a belief as to the truth of the averment that Sedo sought to require bidders to make payment within five days of the end of the auction and on that basis denies this averment.

52.     mTLD denies each and every averment in Paragraph 52 of the Complaint, except that mTLD (1) admits that after the auctions ended on December 5, 2007, mTLD received communications from individuals who participated in the auctions, and (2) lacks sufficient knowledge or information to form a belief as to the truth of the averment that Sedo received complaints from individuals who participated in the auctions and on that basis denies that averment.

53.     mTLD denies each and every averment in Paragraph 53 of the Complaint, except that mTLD admits that it announced that it would void the auctions that began on November 28, 2007.  mTLD further admits that it announced that it would hold new auctions on January 23, 2008, but that the January 23, 2008 auctions did not take place.

54.     mTLD denies each and every averment in Paragraph 54 of the Complaint, except that mTLD admits that mTLD held webinars with participants in the auctions that began on

November 28, 2007, in order to attempt to resolve issues stemming from the auctions, and that Plaintiff Chmiel participated in these discussions.

55.    mTLD denies each and every averment in Paragraph 55 of the Complaint.

56.    mTLD denies each and every averment in Paragraph 56 of the Complaint.

57.    mTLD denies each and every averment in Paragraph 57 of the Complaint.

58.    mTLD denies each and every averment in Paragraph 58 of the Complaint, except that it entered into an agreement dated February 11, 2008 with Jean Romain Colombani under which it agreed to "release to [Jean Romain Colombani] the registration credentials" to video.mobi and that those credentials were transferred by February 26, 2008.

## COUNT I:  BREACH OF CONTRACT

59.    mTLD denies each and every averment contained in Paragraph 59 of the Complaint.

60.    Paragraph 60 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 60 of the Complaint.

## COUNT II:  NEGLIGENCE

61.    Paragraph 61 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 61 of the Complaint.

62.    Paragraph 62 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 62 of the Complaint, except that mTLD states that to the extent the servers or other equipment or software were not appropriately prepared for the auctions, that it was due to Sedo's acts and/or omissions.

63.     Paragraph 63 of the Complaint contains conclusions of law to which no response is required.

## COUNT III:  TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

64.     Paragraph 64 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 64 of the Complaint.

65.     Paragraph 65 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 65 of the Complaint, except that mTLD admits that it entered into an agreement dated February 11, 2008 with Jean Romain Colombani, under which mTLD agreed to "release to [Jean Romain Colombani] the registration credentials" to video.mobi, and that those credentials were transferred by February 26, 2008.

66.     Paragraph 66 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 66 of the Complaint.

## COUNT IV:  CIVIL CONSPIRACY

67.     Paragraph 67 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 67 of the Complaint.

68.     mTLD denies each and every averment contained in Paragraph 68 of the Complaint.

69.     Paragraph 69 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 69 of the Complaint.

- 10 -

70.    Paragraph 70 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies the averment contained in Paragraph 70 of the Complaint.

## COUNT V:  WRONGFUL CONVERSION

71.    Paragraph 71 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 71 of the Complaint.

72.    mTLD denies each and every averment contained in Paragraph 72 of the Complaint.

73.    Paragraph 73 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 73 of the Complaint, except that it entered into an agreement dated February 11, 2008 with Jean Romain Colombani, under which mTLD agreed to "release to [Jean Romain Colombani] the registration credentials" to video.mobi, and that those credentials were transferred by February 26, 2008.

74.    Paragraph 74 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies the averment contained in Paragraph 74 of the Complaint.

## COUNT VI:  FRAUDULENT MISREPRESENTATION

75.    Paragraph 75 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 75 of the Complaint.

76.    Paragraph 76 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained

in Paragraph 76 of the Complaint, except that mTLD admits that it promoted the auctions and that mTLD states that to the extent steps necessary to accommodate the foreseeable web traffic were not taken, that was the result of acts and/or omissions of Sedo.

**COUNT VII:  PROMISSORY ESTOPPEL**

77.     Paragraph 77 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 77 of the Complaint.

78.     Paragraph 78 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 78 of the Complaint, except mTLD admits that it advertised that the auctions would be managed by Sedo, and that on information and belief, Sedo promoted the auctions.

**COUNT VIII:  UNJUST ENRICHMENT**

79.     Paragraph 79 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 79 of the Complaint.

80.     Paragraph 80 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 80 of the Complaint, except that mTLD admits that Plaintiff participated in one or more auctions hosted by Defendant Sedo for authorization codes for certain domain names that were under the control of mTLD.

**COUNT IX:  VIOLATION OF CONSUMER PROTECTION ACT**

81.     Paragraph 81 of the Complaint contains conclusions of law to which no response is required.  To the extent a response is required, mTLD denies each and every averment contained in Paragraph 81 of the Complaint.

82.     Paragraph 82 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, mTLD denies each and every averment contained in Paragraph 82 of the Complaint.

83.     Paragraph 83 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, mTLD denies each and every averment contained in Paragraph 83 of the Complaint.

## PRAYER FOR RELIEF

The prayer for relief contains conclusions of law to which no response is required. To the extent a response is required, mTLD denies each and every averment contained therein.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against mTLD upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

There is no valid binding contract between Plaintiff and mTLD that requires the transfer to Plaintiff of the authentication codes for photo.mobi, photos.mobi, sports.mobi, video.mobi, and/or videos.mobi.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff has not suffered compensable injury or damage.

## FOURTH AFFIRMATIVE DEFENSE

Any damages Plaintiff may have suffered were not caused by mTLD's actions.

## FIFTH AFFIRMATIVE DEFENSE

One or more of Plaintiff's claims are barred because of Sedo's lack of authority to enter into a contract with Plaintiff on behalf of mTLD.

## SIXTH AFFIRMATIVE DEFENSE

One or more of Plaintiff's claims are barred by the Statute of Frauds.

## SEVENTH AFFIRMATIVE DEFENSE

One or more of Plaintiff's claims are barred by Plaintiff's own acts and omissions which caused or contributed to any damages he claims to have sustained.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred by his own failure to mitigate or avoid such damages.

## NINTH AFFIRMATIVE DEFENSE

Some or all of the damages of which Plaintiff complains were the result of fault and/or actions of third parties and/or were the result of independent intervening causes or acts of God.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the mTLD End User Agreement (the "dotMobi Auction Agreement"), including without limitation, sections 10, 11, 13, and 14 of the dotMobi Auction Agreement.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, release, ratification, estoppel, laches, and/or unclean hands.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by unilateral and/or mutual mistake.

## THIRTEENTH AFFIRMATIVE DEFENSE

mTLD's actions were not the proximate or actual cause of any damages Plaintiff may have suffered.

## FOURTEENTH AFFIRMATIVE DEFENSE

One or more of Plaintiff's claims are barred because mTLD does not owe any duty to Plaintiff.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part because Plaintiff has failed to plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are subject to mandatory arbitration pursuant to an agreement between mTLD and Plaintiff. They therefore are barred and must be stayed until an arbitration has been held in accordance with the terms of that agreement.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff has assumed the risk of any injury through his contractual relations with mTLD and Sedo.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Complaint alleges no facts that would provide any basis for an award of attorney's fees or costs, punitive damages, or treble damages.

## NINETEENTH AFFIRMATIVE DEFENSE

No act or omission alleged in the Complaint was committed with the knowledge or intent required for the imposition of punitive damages.

## TWENTIETH AFFIRMATIVE DEFENSE

Any actions allegedly violating any statute or causing harm to Plaintiff were not the fault of, or otherwise attributable to, mTLD.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

No act or omission alleged in the Complaint was committed with the degree of fault or level of intent required for imposition of liability.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff is not entitled to the relief he seeks because he has failed to meet the standards for specific performance and/or injunctive relief.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The punitive damages sought by Plaintiff are excessive and an award of such punitive damages would violate the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred under the Sedo User Agreement.


mTLD reserves the right to amend and supplement its affirmative defenses to include any additional applicable defenses.


## CROSS-CLAIMS AGAINST SEDO.COM

1.      To the extent that mTLD is found to be liable to the Plaintiff in connection with the auctions commencing November 28, 2007, mTLD Top Level Domain, Ltd. ("mTLD") brings these cross-claims against Sedo for breach of contract, breach of the duty of good faith and fair dealing, and indemnification. Pursuant to Rule 13(g) of the Federal Rules of Civil Procedure, mTLD asserts cross-claims against Sedo.com LLC ("Sedo") and alleges as follows:

## PARTIES AND JURISDICTION

2.      On information and belief, Sedo.com, LLC ("Sedo") is a Massachusetts limited liability company, with its principal place of business in Cambridge, Massachusetts.  Sedo is a wholly owned subsidiary of Sedo GmbH whose principal place of business is in Cologne, Germany.  Sedo operates an online marketplace for buying and selling domain names.

3.      mTLD is an Irish company limited by shares with its principal place of business in Dublin, Ireland, and incorporated under the laws of Ireland.  mTLD operates the registry for the .mobi top-level domain.

4.      Because the cross-claims "aris[e] out of the same transaction or occurrence that is the subject matter . . . of" the claims asserted by Plaintiff Chmiel, this Court has jurisdiction over the subject matter of these cross-claims, pursuant to 28 U.S.C. § 1367(a).

## RELEVANT FACTS

5.      mTLD incorporates its answers to the foregoing Paragraphs as if fully set forth herein.

6.      On September 10, 2007, mTLD and Sedo entered into an agreement under which Sedo would provide professional brokerage and auction services for the transfer of authorization codes necessary to register selected .mobi domain names in consideration of payments of commissions by mTLD (the "Sedo-mTLD Agreement").

7.      Pursuant to the Sedo-mTLD Agreement, Sedo "shall promote the interests of mTLD with the utmost good faith, loyalty and fidelity . . ."  Sedo-mTLD Agm. ¶4(e).  Under the Agreement, "mTLD shall not be directly, indirectly, or vicariously liable for the acts of Sedo that are not approved, directed or ratified by mTLD, unless such acts are lawful and necessarily

incident to Sedo's performance of its obligations under this Agreement." Sedo-mTLD Agm. ¶4(f).[1]

8.    In addition, under Section ¶5(d) the Agreement, mTLD only agreed to commit to the transfer of authorization codes for domain names to a bidder subject to the agreement by the bidder to abide by the terms, conditions, and limitations set forth in the mTLD End User Agreement (the "mTLD End User Agreement" also known as "dotMobi Agreement").

9.    Starting on November 28, 2007, Sedo, on behalf of mTLD, hosted the third in a series of three auctions for the authorization codes for 100 domain names, including photo.mobi, photos.mobi, sports.mobi, video.mobi, and videos.mobi.

10.   During the auctions, on information and belief, Sedo experienced an outage of one or more servers. While the auction server(s) was offline, the Sedo.com website (or the "web interface") remained functional. As a result, while at least some auction participants were able to place bids, those bids were not displayed on Sedo's website. In addition, on information and belief, certain proxy bids placed in advance up to a certain maximum amount were not appropriately processed and displayed on the website.

11.   While the server(s) was not operational, Plaintiff Chmiel, and certain other bidders, received from Sedo computer-generated emails sent by an automated process.

12.   Sedo did not make mTLD aware of the server issues while the auction server(s) was offline. Upon restoring the auction server(s), Sedo decided to continue the auctions. Sedo did not consult with mTLD before making this decision.

13.   Upon information and belief, Sedo failed to properly obtain some bidders' consent to the mTLD End User Agreement.

---

[1]    The Brokerage Agreement contains two sections labeled 4(f). Throughout this Complaint, references to 4(f) are to the second such 4(f).

## COUNT I:  BREACH OF CONTRACT

14.    mTLD hereby incorporates the foregoing Paragraphs as if fully set forth herein.

15.    The Sedo-mTLD Agreement, executed by authorized representatives of mTLD and Sedo, constitutes a valid contract that required Sedo to carry out its duties to mTLD with reasonable care.

16.    Sedo's acts and omissions resulted in a breach of the terms and conditions of the mTLD-Sedo Agreement, including without limitation, Sedo's failure to maintain and monitor the operations of the servers and other equipment and software used in the auctions in a manner sufficient to protect the interests of mTLD, its failure to consult with mTLD prior to taking unilateral action to continue the auctions, and its failure to gain the consent of certain bidders to the mTLD End User Agreement.

17.    To the extent that mTLD is found liable to the Plaintiff, that liability was caused by Sedo's breaches of its contractual obligations, and mTLD has suffered and will continue to suffer damages in an undetermined amount to be proven at trial.

## COUNT II:  BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

18.    mTLD hereby incorporates the foregoing Paragraphs as if fully set forth herein.

19.    Sedo had a duty of good faith and fair dealing with respect to the performance of the Sedo-mTLD Agreement, including the duty to obey all reasonable directions of mTLD.

20.    Sedo's actions and omissions violated its duty of good faith and fair dealing to mTLD, including, *inter alia*, its failure to maintain and monitor the operations of the servers and other equipment and software used in the auctions in a manner sufficient to protect the interests of mTLD, failing to keep mTLD informed about the status of the auctions, and failing to consult with mTLD prior to taking unilateral action to continue the auctions.

21.    Sedo breached its duty of good faith and fair dealing knowingly and/or with reckless disregard to its duties towards mTLD.

22.    To the extent that mTLD is found liable to the Plaintiff, that liability was caused by Sedo's breach of the duty of good faith and fair dealing, and mTLD has suffered and will continue to suffer monetary damages in an undetermined amount to be proven at trial.

### COUNT III:  CONTRACTUAL INDEMNIFICATION

23.    mTLD hereby incorporates the foregoing Paragraphs of this cross-claim as if fully set forth herein.

24.    Under Section 4(f) of the Sedo-mTLD Agreement, Sedo is required to indemnify mTLD for "all claims for acts of Sedo that are not approved, directed, or ratified by mTLD any and all liabilities incurred in connection with asserted by Plaintiff, in an undetermined amount to be proven at trial."

25.    To the extent that mTLD is found liable to the Plaintiff, that liability was caused by actions and/or omissions of Sedo.  As a result, Sedo is liable to indemnify mTLD for an undetermined amount to be proven at trial.


### JURY DEMAND

mTLD hereby requests trial by jury on the Amended Complaint and cross-claims for issues so triable thereby.

**WHEREFORE**, having fully responded to the Complaint, Defendant mTLD respectfully prays as follows:

1.    That Plaintiff's claims be dismissed with prejudice.

2.    That the Court enter an order determining and adjudging that Plaintiff is not entitled to the relief he seeks against mTLD.

- 20 -

3.      That the Court award judgment on mTLD's cross-claims against Sedo.

4.      That the Court grant to mTLD costs, attorneys fees, and expenses of this litigation.

5.      That the Court grant such other and further relief as the Court deems just and proper.

Dated: March 7, 2008                              Respectfully submitted,


                                                  /s/ Samir Jain
                                                  Samir Jain (D.C. Bar No. 456090)
                                                  Kathryn C. Arnold (D.C. Bar No. 483173)
                                                  WILMER CUTLER PICKERING HALE &
                                                    DORR LLP
                                                  1875 Pennsylvania Ave. N.W.
                                                  Washington, D.C. 20006
                                                  202-663-6000 (telephone)
                                                  202-663-6363 (facsimile)
                                                  Samir.Jain@wilmerhale.com


                                                  *Counsel for Defendant mTLD, LTD*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of March, 2008, a copy of the foregoing

Answer of Defendant mTLD Top Level Domain, Ltd. to Plaintiff's Complaint and Cross-Claims

Against Defendant Sedo.com, LLC, was filed electronically with the Clerk of the Court.  The

electronic filing prompted automatic service of the filing to all counsel of record in this case who

have obtained CM/ECF passwords.


                                        /s/ Samir Jain_____
                                        Samir Jain