IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAUL CHMIEL | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:08-cv-00365-HHK |
| | ) Oral Hearing Requested |
| SEDO.COM, LLC, ET AL. | ) |
| Defendants | ) |

## PLAINTIFF CHMIEL'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff Paul Chmiel, through counsel, Eric Menhart and CyberLaw P.C., files this Reply and states as follows:

### I. REMOVAL WAS NOT TIMELY

**A. "Receipt" of Papers is Only Fact Relevant to Analysis**

Defendants first argue that service of papers on Sedo.com, LLC was insufficient under the removal statutes. They argue that (i) the Consent Motion governed, and that (ii) a demonstration of receipt by Sedo was insufficient without filing of an affidavit of service. Opposition at 4. The applicable statute provides:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the *receipt by the defendant*, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (emphasis added). The plain language of the statute dismisses both of the Defendants' arguments. The statute is not concerned with subsequent events, but only with a defendant's *receipt* of the relevant papers. Defendants do not dispute in their Opposition that

1

Sedo received the relevant papers on the date shown by the Plaintiff. Plaintiff Exhibits #25, 26. Because it is undisputed that Sedo received the papers on January 25, 2008, the time in which to remove began to run at time of receipt.

### B. Time Begins to Run Upon First Defendant's Receipt of Papers

The thirty day time period in which Defendants may remove a matter begins to run once the first Defendant is served. Motion at 3. District of Columbia courts have formally adopted this standard, which the Defendants themselves recognize in their Opposition. Opposition at 4 n. 7. The District Court for the District of Columbia adopted the rule "holding that the first-served defendant must petition for removal within thirty days of service or its inaction will prevent later-served defendants from removing the case." Phillips v. Corr. Corp. of Am., 407 F. Supp. 2d 18, 21 (D.D.C. 2005) (citing McKinney v. Board of Trustees of Mayland Community College, 955 F.2d 924, 928 (4th Cir. 1992)). The Court concluded that this "rule is the best reasoned interpretation and application of § 1446(b)." Id. This recognized standard should be applied similarly here.

### C. Diversity Jurisdiction Was Possible Upon Initial Filing of the Action

Defendants next argue that the numerous nations and states of residence in this suit somehow precluded diversity jurisdiction when the suit was filed. Applying federal statutory law and District of Columbia judicial holdings one would determine that the suit was sufficiently diverse at the time of initial filing and removal was proper at that time.

Suit at time of filing consisted of four Plaintiffs and two Defendants. Plaintiff Roussos was a citizen of California, Plaintiff Chmiel was a citizen of Texas, Plaintiff James was a citizen of Australia, and Plaintiff Mahroug was a citizen of The Netherlands. Defendants were mTLD,

based in Dublin, Ireland, with its principal place of business in Washington, DC and Sedo, which Defendants allege is a German company. Federal statutory law dictates as follows:

> § 1332.  Diversity of citizenship; amount in controversy; costs
> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest and costs, and is between—
> (1) Citizens of different States;
> (2) citizens of a State and citizens or subjects of a foreign state;
> (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
> (4) a foreign state, defined in section 1603(a) of this title as plaintiff and citizens of a State or of different States.
> . . .
> (c)
> (1) *a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business*.

28 USC §1332 (emphasis added). Defendants themselves identify mTLD as a legal "corporation." Opposition at 2. mTLD, maintaining a principal place of business in Washington, DC, must be considered a citizen of the District of Columbia under federal law. 28 U.S.C. §1332(c).

It is undisputed that mTLD has a principal place of business in Washington, DC, because mTLD itself admits this fact. mTLD has sent out *no less than twenty press releases*,[1] located on its own web site at http://www.mltd.mobi, noting that "dotMobi (the informal name of mTLD Top Level Domain, Ltd.), is a consortium based in Dublin, Ireland with offices in Washington, DC." See e.g. Plaintiff Exhibit #31.

Because the initial action involved Plaintiff Chmiel, a citizen of Texas, and Defendant mTLD, a citizen of Washington, DC, diversity jurisdiction was proper at the time the initial

---

[1] Defendant mTLD provided public press releases identifying Washington, DC as an office on numerous dates in 2007 and 2008, including the dates of February 5, 2007, April 6, 2007, April 18, 2007, May 2, 2007, May 8, 2007, June 6, 2007, July 1, 2007, July 11, 2007, August 14, 2007, August 28, 2007, August 30, 2007, September 5, 2007, September 12, 2007, September 13, 2007, October 9, 2007, October 22, 2007, October 30, 2007, November 15, 2007, November 27, 2007, and February 4, 2008

3

action was filed. Both parties that gave rise to the initial diversity jurisdiction remain in the action and remain diverse. Circumstances such as this, "in which citizens of states are on both sides of the litigation . . . and are completely diverse, fits section 1332(a)(3) to a t." Allendale Mut. Ins. Co. v. Bull Data Sys., 10 F.3d 425, 428 (7th Cir. 1993) (citing Transure, Inc. v. Marsh & McLennan, Inc., 766 F.2d 1297, 1298-99 (9th Cir. 1985).

District of Columbia law further supports this conclusion. Recent District of Columbia jurisprudence considering a similar factual situation found that "diversity jurisdiction is proper under 28 U.S.C. § 1332(a)(3), because this suit is between citizens of different States (ROZ of New Jersey and the U.S. Zeromax Defendants of Delaware) and a citizen or subject of a foreign state (ROZ (U)) is an additional party." Roz Trading Ltd. v. Zeromax Group, Inc., 517 F. Supp. 2d 377, 390 (D.D.C. 2007). The Roz Trading Ltd. Court also noted that "§1332(a)(3) unequivocally vests federal courts with jurisdiction over disputes in which aliens appear on both sides of the action." Id. (citing Zenith Elecs. Corp. v. Kimball Int'l Mfg., Inc., 114 F. Supp. 2d 764, 769 (N.D. Ill. 2000) (citing Dresser Indus., Inc. v. Underwriters at Lloyd's of London, 106 F.3d 494, 497-98 (3d Cir. 1997)).

The circumstances in Roz Trading Ltd. were virtually identical to the present action. Both actions involved a "citizen" of a different state on each side of the "v." Both actions had other foreign parties as "additional parties." Numerous Federal Circuits, including the present Circuit, recognize that organization of parties identical to this case immediately gives rise to diversity jurisdiction. Defendants' arguments that diversity jurisdiction somehow arose when some of the foreign parties settled their claims is simply not relevant. The parties that gave rise to diversity jurisdiction were in place at the time of filing and remain in place now. Because diversity jurisdiction was proper at the time of filing and Defendant Sedo received the relevant papers on

4

January 25, 2008, the attempted removal by Defendants on February 28, 2008 was not timely and cannot be considered by the court.

## II. SEDO WAS NOT ABLE TO GIVE CONSENT

Defendants believe Plaintiff argues that Sedo did not seek to remove the action. Opposition at 8. Plaintiff's argument is not that Sedo did not *want* to remove the action, but that Sedo *could not* remove the action. As Plaintiff states in his Motion "Sedo is not able to join in the attempt to remove this action because it failed to file for removal in the time allowed under federal law." Motion at 4.

Plaintiff does not dispute that Defendant Colombani is generally insignificant in the analysis because the French national has yet to be served. Plaintiff addresses this issue in his Motion, noting "that not-yet-served Defendants are subject to special circumstances." Motion at 4-5. The fact remains, however, that only one of the three Defendants, mTLD, affirmatively assented to removal and had the statutory right to attempt to remove. Motion at 3-4.

## III. AMOUNT IN CONTROVERSY IS NOT MET

Defendants next describe methods employed by District of Columbia courts as "nonsense." Opposition at 9. As Plaintiff described in his Motion, courts may "determine the jurisdictional amount by looking to the cost to the defendant of complying with any equitable relief." Motion at 5. Plaintiff then provides specific examples of such application by District of Colombia courts. For example, in <u>Committee for GI Rights v. Callaway</u>, cited on page 5 of Plaintiff's Motion, the court provides:

> jurisdictional amount is also satisfied with respect to all of the plaintiffs because of the costs that the Army would incur if the plaintiffs prevailed. The cost to the Army in that event would be the cost of (1) stopping the drug inspections entirely or providing a warrant procedure for inspections; (2) providing a hearing prior to the imposition of

5

administrative measures; (3) eliminating other challenged aspects of the drug program, i.e., the poster regulation.

<u>Committee for GI Rights v. Callaway</u>, 171 U.S. App. D.C. 73, 518 F.2d 466, 473 (D.C. Cir. 1975). While the jurisdictional amount was satisfied in this matter because of the costs the Army would incur, no such costs are present in this matter. Plaintiff is unable to determine any costs that Defendants would incur in complying with the equitable relief presented. Defendants, who bear the burden of proving that the requisite jurisdictional amount is met, do not demonstrate in their Opposition any costs exceeding $75,000 that may be incurred in complying with the relief requested.

It is unclear why Defendants suggest that the analysis by the <u>Committee for GI Rights</u> court was "nonsense," particularly when the standard and application are perfectly clear. Furthermore, Defendants provide nothing that refutes the law that the Plaintiff provided in his Motion, instead concentrating on the application of another method, the "fair market value" method, of calculating amount in controversy.

The parties agree that were the "fair market value" method applied, an auction would be a reasonable method of determining the price. As Plaintiff discussed in his Motion, the five invoices that he received for the five names totaled less than $70,000. Motion at 5 n. 1. Plaintiff Chmiel received invoices for sports.mobi in the amount of $31,000, video.mobi in the amount of $25,555, videos.mobi in the amount of $15,500, photo.mobi in the amount of $6,100, and photos.mobi in the amount of $6,350. Taken together, the total amount of all names is $69,950. Plaintiff additionally requested damages in excess of $5,000 in his Complaint. Adding $5,001, an amount in excess of $5,000, to the total amount of all invoices received by the Plaintiff results in

a total amount in controversy of $74,951, which is insufficient to meet the amount in controversy requirement.[2] Thus, the amount in controversy could be less than $75,000.

Because "any ambiguities regarding the existence of removal jurisdiction must be resolved in favor of remand," an amount in controversy that is not clearly in excess of the statutory minimum cannot be maintained in a federal court. Nwachukwu v. Karl, 223 F. Supp. 2d 60, 66 (D.D.C. 2002).

Here there are at least two ambiguities. First, there is an ambiguity as to which of the auctions is valid. Indeed, it is the central question in the case. Plaintiff argues that the "first auction," for which he received invoices and which ended as scheduled, is the appropriate indicator of "fair market value." Defendants argue that the "second auction," which they unlawfully restarted when unhappy with prices in the first auction, is the appropriate indicator of "fair market value." The second ambiguity, as shown, is the fact that the amount in controversy could be less than $75,000. Any amount not exceeding $75,000 cannot be maintained in this Court. Given these ambiguities, applicable law demands that the matter be remanded.

## IV. COSTS AND FEES ARE APPROPRIATE

The parties predictably disagree as to whether fees are appropriately awarded to the Plaintiff. Motion at 6-7. The parties agree that fees are properly awarded when the removing party lacked an objectively reasonable basis for seeking removal. Opposition at 11. Plaintiff contends that attempting to remove a matter when it is past the date allowed by clear statutory deadlines cannot be considered "objectively reasonable" under any circumstances. Fees are thus appropriately awarded to Plaintiff.

---

[2] Because Defendants themselves do not consider claims for punitive damages relevant to the analysis, they are not included in the Plaintiff's calculations. Opposition at 11.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Remand is properly granted and Plaintiff is entitled to costs and fees.

Respectfully submitted,

_____
Eric J. Menhart (D.C. Bar No. 975896)
CyberLaw P.C.
1200 G St NW Suite 800
Washington, DC 20005
eric.menhart@cyberlaw.pro
Phone: 202-434-8711
Fax: 240-539-6235
http://www.cyberlaw.pro

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2008, a copy of the foregoing was electronically filed with the Clerk of the Court. All counsel of record registered with the Court's electronic filing system were automatically served by the system.

_____
Eric J. Menhart (D.C. Bar No. 975896)
CyberLaw P.C.
1200 G St NW Suite 800
Washington, DC 20005
eric.menhart@cyberlaw.pro
Phone: 202-434-8711
Fax: 240-539-6235
http://www.cyberlaw.pro



## amtrak launches .mobi site to provide even greater online access for passengers

**Date:**
2007-05-08

**WASHINGTON, DC – May 8, 2007** – Continuing in its role as a leader in online access, Amtrak today announced the launch of Amtrak.mobi, a new domain for Amtrak.com users. The .mobi domain is designed to guide mobile users to made-for-mobile Internet content and services that can be accessed with the confidence of knowing a site will work on practically any mobile phone. Because the Amtrak.mobi site is optimized for smaller screens, it provides easy access to the train reservation and information systems of Amtrak.com using most web-enabled mobile devices including cell phones and PDAs.

Amtrak.mobi is the first travel site in the United States to offer customers the ability to purchase a ticket using a mobile device. In addition, users may also access their booking profile and view up-to-date train status information. The site complements Amtrak Mobile, the mobile web-accessing system that Amtrak launched last summer. Like Amtrak Mobile, information viewed through Amtrak.mobi is available in both English and Spanish.

"With the growth of our online ticket sales – which now total 42% of all sales – providing our passengers with convenient access to Amtrak.com is a priority," said Kathleen Gordon, Senior Director E-Commerce. "Launching our Amtrak.mobi site ensures that we are able to reach the greatest number of passengers because our .mobi domain is accessible from practically any web-enabled phone and PDA."

### About Amtrak
Amtrak provides intercity passenger rail service to more than 500 destinations in 46 states on a 21,000-mile route system. For schedules, fares and information, passengers may call 800-USA-RAIL or visit Amtrak.com.

### About dotMobi
dotMobi (the informal name of mTLD Top Level Domain, Ltd.), a consortium based in Dublin, Ireland with offices in Washington, DC and Beijing, is leading the growth of Internet use from mobile phones with the .mobi domain name. Unique among domain name providers, dotMobi ensures that services and sites developed around .mobi are optimized for use by mobile devices. On-the-go consumers can have confidence that an Internet site or service will work on their mobile phones when using a .mobi address.

dotMobi is backed by leading mobile operators, network & device manufacturers, and internet content providers, including Ericsson, GSM Association, Hutchison (3), Microsoft, Nokia, Orascom Telecom, Samsung Electronics, Syniverse, T-Mobile, Telefonica Moviles, TIM, Visa and Vodafone. dotMobi is also a sponsor of W3C's Mobile Web Initiative.

For more information on dotMobi domains and registration information, visit: http://mtld.mobi. Visit the dotMobi blog at http://blog.mobi.

**For more information, please contact:**
Vance Hedderel
dotMobi (mTLD Top Level Domain, Ltd.)
+1-703-485-5563
vhedderel@mtld.mobi

Danielle Siemon
A&R Edelman for dotMobi
+1-650-762-2947
danielle.siemon@edelman.com

Sasha Manners
Edelman UK for dotMobi

Case 1:08-cv-00365-HHK    Document 21-2    Filed 04/09/2008    Page 2 of 2

+44-(0)20-7344-1200
sasha.manners@edelman.com

© 2008 mTLD, Ltd. All rights reserved. Legal